IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATTY R. CARPER,                                    CV 06-6304-MA

           Plaintiff,                               OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

           Defendant.


KATHRYN TASSINARI
Drew L. Johnson, P.C.
17000 Valley River Drive, First Floor
Eugene, OR 97401
(541)434-6466

           Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

TERRYE E. SHEA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2143

     Attorneys for Defendant

MARSH, Judge.

     Plaintiff Patty R. Carver filed this action for judicial review of the final decision of the Commissioner denying her May 13, 2003, application for disability insurance benefits (benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.

     On the date of the Commissioner's final decision, plaintiff was 48 years old.  She has a GED and completed a two-year community college course in office occupations.  She has been employed as a word processor operator, user support specialist, information technology consultant, secretary, and legal secretary.

     Plaintiff filed a claim that she has been disabled since January 31, 2001, because of post-traumatic stress disorder and depression that followed surgery for bile reflux gastritis in October 2000.  Her claim was denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on November 3, 2003, and thereafter issued a decision that plaintiff was not disabled.  On April 27, 2004, the Appeals

Counsel denied plaintiff's request for review.  That decision became the final decision of the Commissioner for purposes of review.

Plaintiff sought an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.  Thereafter, pursuant to a stipulation of the parties, the court remanded this matter to the Commissioner, <u>inter alia</u>, for further proceedings to reevaluate the impact of plaintiff's limitations in combination, and to reassess and properly address medical source opinions, to explain the weight given to such opinions.  On December 15, 2005, the ALJ conducted a hearing in compliance with the Remand Order.  On July 28, 2006, the ALJ again found plaintiff was not disabled and denied her claim for benefits.  The Appeals Council did not review the case, and the ALJ's decision became the Commissioner's final decision for purposes of review.

Plaintiff now seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.  The Commissioner contends her decision is based on substantial evidence, is free from legal error, and therefore, the court should affirm her decision denying benefits.

This court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons below, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this action for an award of benefits.

3 - OPINION AND ORDER

## DISCUSSION

The issues are whether the ALJ (1) failed to give clear and convincing reasons for rejecting plaintiff's testimony regarding the extent and severity of her mental impairments, and (2) failed to give clear and convincing reasons for accepting the testimony of consulting psychologist Susan Dragovich, Ph.D, and opinion of consulting psychologist Paul Rethinger, Ph.D., that plaintiff was not disabled, notwithstanding the contrary opinions of treating psychiatrist, Clara Bozievich, M.D., and treating psychologist, Eric Yelsa, Ph.D..

This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this action for further proceedings.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Following the remand, at Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff has the following severe impairments under 20 C.F.R. §§404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities):  Depression; anxiety disorder, marijuana abuse, history of alcohol abuse; possible cognitive disorder; history of back strain with possible degenerative disc disease; history of irritable bowel syndrome; history of reflux gastritis status-post gastric surgery in 2000, with complications, including aggravation of a psychiatric condition.  The ALJ found the evidence of these impairments is "a bit sketchy, but to give the claimant the benefit of any doubt the combination of these impairments causes more than slight limitations of functioning."

At Step Three, the ALJ found plaintiff's impairments did not meet or equal "the requisite criteria for any listings" as set forth in 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d).

The ALJ found plaintiff has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She has limited capacity for multi-step tasks and interaction with the public where there are direct service demands and consistent interaction and coordination.  She has limited ability to tolerate close interaction with co-workers in team functions.  She has moderate difficulty tolerating changes

to her work routine.

For reasons more fully addressed below, the ALJ found plaintiff's statements regarding the intensity, duration and limiting effects of her symptoms were "not entirely credible."

At Step Four, the ALJ found plaintiff was unable to perform her past relevant jobs that involved sedentary skilled work. 20 C.F.R. §§ 404.1520(a)(4)(iv).

At Step Five, the ALJ found plaintiff is able to perform other work that exists in significant numbers in the regional and national economy, including the jobs of bench assembler, mail clerk, or sedentary assembler.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## LEGAL STANDARDS ON JUDICIAL REVIEW

### 1. Burden of Proof.

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision

6 - OPINION AND ORDER

if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).

    The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision. Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation." Andrews,
53 F.3d at 1039-40.

    The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence. Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

    The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000). "If additional proceedings can
remedy defects in the original administrative proceeding, a

7 - OPINION AND ORDER

social security case should be remanded." <u>Lewin v. Schweiker</u>,
654 F.2d 631, 635 (9th Cir. 1981).

**2.   <u>Crediting Plaintiff's Testimony</u>.**

A plaintiff who alleges disability based on subjective
symptoms "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged. . . .'" (the <u>Cotton</u>
test).  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991)
(quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See also</u> <u>Cotton v.</u>
<u>Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The plaintiff
need not produce objective medical evidence of the symptoms or
their severity.  <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th
Cir. 1996).

If the plaintiff offers objective evidence that underlying
impairments could cause the physical or mental conditions she
complains of and there is no affirmative evidence to suggest she
is malingering, the ALJ must give clear and convincing reasons
for rejecting the plaintiff's testimony as to the severity of her
symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).
<u>See</u> <u>also</u> <u>Smolen</u>, 80 F.3d at 1283.  To determine whether the
plaintiff's subjective testimony is credible, the ALJ may rely on
(1) ordinary techniques of credibility evaluation such as the
claimant's reputation for lying, prior inconsistent statements

concerning the symptoms, and other testimony by the claimant that
appears less than candid; (2) an unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily activities.
Id. at 1284 (citations omitted).

**3.    Crediting Medical/Psychological Opinions.**

In Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), the
Ninth Circuit set forth the weight to be given to the opinions of
treating doctors:

> The opinions of treating doctors should be
> given more weight than the opinions of
> doctors who do not treat the claimant. Where
> the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing
> reasons supported by substantial evidence in
> the record.  Even if the treating doctor's
> opinion is contradicted by another doctor,
> the ALJ may not reject this opinion without
> providing specific and legitimate reasons
> supported by substantial evidence in the
> record.  This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings.  The ALJ must do more than offer
> his conclusions.  He must set forth his own
> interpretations and explain why they, rather
> than the doctors', are correct.

(Internal Citations Omitted).  In turn, "the opinions of
examining physicians are afforded more weight than those of non-
examining physicians."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.
2007).

## RELEVANT RECORD

At the second hearing in this matter following remand, the Vocational Expert testified that if the evidence and opinions from plaintiff's mental health practitioners were credited as true, plaintiff would be unable to engage in substantial gainful activity.

In determining whether the ALJ gave clear and convincing reasons for discrediting plaintiff and rejecting the opinions of her treating mental health providers regarding plaintiff's ability to work, the relevant record is plaintiff's testimony and the medical reports that support or detract from plaintiff's claim that her mental impairments, including depression, post-traumatic stress disorder, and anxiety disorder, are sufficiently severe, when considered in combination with her physical impairments, to preclude her from engaging in any substantial gainful activity.[1]

1.  **Plaintiff's Testimony.**

    First Hearing - November 13, 2003.

    Plaintiff underwent stomach surgery in October 2000. Because of complications from the surgery, she remained hospitalized for three weeks rather than the expected three days.

---

[1] The focus of both parties' arguments is the sufficiency of the mental impairment evidence, not the physical impairment evidence.

10 - OPINION AND ORDER

Before the surgery she had been employed for ten years as an
Information Technology Consultant at Oregon State University in
October 2000.  In the four or five months leading up to the
surgery, she was only able to work half-time because of her
stomach problems, back pain, and migraine headaches.  She was
unable to return to work after the surgery and has not been
employed since then.

Plaintiff stated her memory is "really bad" to the point she
is unable to remember conversations that took place a day or even
a few minutes ago.  Constant noise sends her "into a frenzy" and
she will get "real nervous."  She is reluctant to drive because
she will lose her way.  She takes Effexor to alleviate her
depression.  She cannot motivate herself to do much of anything
because she "get[s] so overwhelmed by looking at everything I
need to do," such as housekeeping.  She watches a lot of TV but
does not retain much of what she views.  She has difficulty
reading books because she forgets what she read on the preceding
page.  She leaves the house only once or twice a week because of
lack of motivation.  She and her husband occasionally would have
friends over and used to play pool once a week but had not done
so recently because she was unable to get on a schedule to do so.
They occasionally go out to dinner.  She has erratic sleep
patterns, some days sleeping eight to ten hours, and other
days only five hours.

11- OPINION AND ORDER

Plaintiff has panic attacks about once a month but she has learned to avoid situations, such as being around other people, that lead to them.

Plaintiff smokes marijuana once or twice a week because it helps to reduce her anxiety.

Second Hearing - December 15, 2005.

Plaintiff testified her mental state had worsened since the first hearing. She is shakier, cries, and becomes angry more easily. She misplaces things more often than in the past. Since the last hearing, she has tried sewing but finds the instructions difficult to read and has difficulty "matching things up the right way." She now has difficulty speaking without the words coming out garbled.

Plaintiff testified that when she gets upset and agitated, she gets sick to her stomach and has diarrhea. She continues to have difficulty leaving the house, even to go into the garden. Her main problems are anxiety, depression, and confusion. She continues to smoke marijuana a couple of times a week and has advised her doctor of that fact.

2.  **Medical Evidence as to Mental Impairments**.

Treating Physician Bruce Thomson, M.D. - Family Medicine.

Dr. Thomson treated plaintiff for a variety of medical complaints from December 2001 until May 2002. In a February 2002 examination, he noted plaintiff "has really had significant

increased problems [with anxiety] ever since a complicated hospitalization about a year or so ago.  She is disabled, I think, more for her anxiety, in my own mind."  He noted her family history of suicide (father and brother), and some indication of "a bi-polar aspect as well."  He also noted Lorazepam "does seem to help" but Paxil "actually made her anxiety worse."  He recommended a trial of Klonopin.

Treating Psychologist - Eric Yelsa, Ph.D.

Dr. Yelsa treated plaintiff from June 2001 through March 2002.  Following plaintiff's initial visit, Dr. Yelsa diagnosed a cognitive disorder, major depression recurrent, severe, without psychotic features, post-traumatic stress disorder, and post-surgical recovery with cognitive decline.  He assigned a current GAF score of 54 (moderate symptoms, and moderate difficulty in social, occupational, or school functioning).

In July 2001, Dr. Yelsa conducted a full range of neuro-psychological tests that confirmed his preliminary diagnoses.  He noted "[i]t is apparent that [plaintiff] is struggling in her abilities to complete daily activities.  He reduced her current GAF score to 52.  He noted the highest GAF score in the past year was 75.

In November 2001 and March 2002, Dr. Yelsa completed long term disability statements for insurance purposes that plaintiff was disabled because of major depression and post-traumatic

13- OPINION AND ORDER

stress disorder,

In February 2002, Dr. Yelsa completed a physician's statement in which he opined plaintiff had a disability that was likely to continue for "at least a year" with "no reasonable probability the disabling condition will ever improve."  He also completed a Mental Residual Functional Capacity Assessment in which he concluded, after excluding drug- or alcohol-related limitations, plaintiff had moderate to moderately severe difficulties with understanding and memory, moderate to severe difficulties in sustained concentration and persistence, insignificant to moderate difficulties with social interaction, moderately severe difficulties in adapting to work place changes.

Treating Psychiatrist - Clara Bozievich, M.D.

Dr. Bozievich treated plaintiff from January 2003 through December 2003.  As a result of her initial examination, Dr. Bozievich diagnosed major depression, recurrent, moderate, panic disorder with agoraphobia, rule out post-traumatic stress disorder, marijuana dependence, and a history of alcohol abuse/dependence.  Dr. Bozievich assigned a GAF score of 50 (serious symptoms, e.g. suicide ideation, and serious impairment in social, occupational, or school functioning).  Dr. Bozievich recommended to plaintiff that she quit using marijuana and not drink, or else consider entering a treatment program.  During the course of treatment, Dr. Bozievich noted both improvement and

14- OPINION AND ORDER

exacerbation of anxiety and depressive symptoms, in some part due to the availability of her Effexor, the primary medication she was taking to alleviate her depression.

In November 2002, Dr. Bozievich completed an insurance form on which she diagnosed plaintiff as suffering from major depression, recurrent, moderate, panic disorder with agoraphobia, cannabis dependence and history of alcohol abuse. She concluded plaintiff had "moderate motivation" and she doubted "conscious malingering" while noting plaintiff "has  psychiatric issues and tends to somaticize."

Dr. Bozievich also completed a Mental Residual Functional Capacity Assessment in which she concluded, after removing drug- or alcohol-related limitations, plaintiff had mild to moderate difficulties with understanding and memory, mild to moderately severe difficulties in sustained concentration and persistence, mild to moderately severe difficulties with social interaction, and mild to moderately severe difficulties in adapting to work place changes.

Consulting Psychologist Susan L. Dragovich, Ph.D.

Dr. Dragovich testified as a medical expert at both hearings. Based on her review of the medical records, and after listening to plaintiff's testimony at both hearings, Dr. Dragovich opined that plaintiff suffers from a depressive

disorder not otherwise specified, anxiety disorder not otherwise
specified, and marijuana dependence.  She testified the treating
doctors' check-list responses as to plaintiff's limitations
"don't necessarily comport with what the content of the records
were."

Dr. Dragovich noted Dr. Yelsa opined plaintiff was unable to
follow simple directions yet she completed 3 1/2 hours of
complicated testing.[2]  Dr. Dragovich emphasized the limiting
effects of plaintiff's marijuana dependence on her ability to
maintain a regular work schedule.  She pointed out there did not
seem to be an explanation as to why plaintiff's GAF score dropped
from 75 to 52, according to Dr. Yelsa.  She opined that if
plaintiff stopped using marijuana, she would have "some clearing
of the cognitive complaints that she has and I think her anxiety
reports, her symptoms would be better treated by proper
medication."  Dr. Dragovich, however, was unable to cite any
pharmacological studies that conclude the use of marijuana would
reduce the efficacy of the medication plaintiff was taking.

Dr. Dragovich disagreed with Dr. Yelsa's opinions regarding
the severity of plaintiff's mental impairments based on perceived
inconsistencies with what Dr. Yelsa reported in his treatment

---

[2] Plaintiff interjected that the testing was not completed in
one session.

sessions and what he marked on the check-list as to plaintiff's
residual mental capacity.  Dr. Dragovich did not agree with
Dr. Bozievich's check-list answers, although she did not identify
specific areas of disagreement with Dr. Bozievich's chart note
assessments.

Dr. Dragovich concluded plaintiff had mild difficulties with
activities of daily living and social functioning, and moderate
limitations as to concentration, persistence, and pace.  She
opined plaintiff retained the capacity to perform simple,
repetitive tasks with limited interaction with the general public
and that plaintiff's cognitive function would improve without
marijuana use.

Consulting DDS Psychologists -
Paul Rethinger, Ph.D. and Frank Lehman, Ph.D.

These psychologists reviewed plaintiff's medical records and
concluded she had, at worst, mild mental functional limitations.

**ANALYSIS**

1.  **Rejection of Plaintiff's Testimony**.

The ALJ rejected plaintiff's testimony regarding the
severity of her symptoms based on his finding she was not
entirely credible.

The ALJ discounted plaintiff's testimony regarding the
intensity, duration, and limiting effects of her symptoms, but
not the existence of the symptoms.  He relies on plaintiff's

pattern of polysubstance abuse relating to alcohol and marijuana, which "suggest[] patterns of duplicity/evasions/misdirection." He also relies on plaintiff's self described activities of playing in a pool league once a week, visiting friends, and relatives occasionally, going on hunting, camping, fishing trips, and, sewing, as evidence her functional capacity is not as limited as alleged.

I have carefully reviewed the record and find it does not reasonably support the ALJ's credibility determination in any regard.  Plaintiff has a "history" of alcohol abuse dating back to a DUII conviction in 1992.  There is no medical or other evidence that plaintiff has abused alcohol in the several years before or the years after she filed her disability claim.  There is evidence that she continues to use marijuana approximately twice a week.  The evidence, however, is that she has been open and honest with her doctors about her use.  There is no substantial evidence that marijuana dependence and/or use of alcohol have any bearing on her honesty.  Moreover, her hobby and recreational activities are infrequent, and have diminished since 2001.  Finally, there is no suggestion in the record that plaintiff is a malingerer.

On this record, I find the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony regarding the severity of her symptoms.

18 - OPINION AND ORDER

Failure to Credit Treating Physicians' Disability Opinions.

The ALJ credited the non-disability opinion of testifying psychologist Susan Dragovich, who reviewed plaintiff's medical records but did not examine or treat her, and rejected contrary opinions of treating Dr. Thomson, Dr. Yelsa, and Dr. Boziewich.

As his reasons for ignoring the treating doctors' opinions, the ALJ noted as follows: a 2001 cognitive and neurological examination, EEG, and mental status examination were normal; Dr. Yelsa's GAF score of 52 "appears to be low" in light of plaintiff's test performance, with no explanation for the drop from an earlier GAF score of 75; in September 2001, plaintiff's PTSD was improved when she was taking Serzone; plaintiff does well when she complies with medications; Dr. Bozievich's opinions are "deeply undercut" because although she cautioned plaintiff against continued use of marijuana, she ignored this issue in [her] subsequent reporting; Dr. Yelsa did not have knowledge of plaintiff's current substance abuse and did not see the medical records examined by Dr. Dragovich; Dr. Bozievich and Dr. Yelsa gave their opinions by marking check-off boxes; and Dr. Thomson's disability opinion was "vague and equivocal, and inconsistent" with the reports of Dr. Yelsa and Dr. Dragovich's testimony.

I do not find the ALJ's reasons persuasive. Dr. Yelsa concluded from the test results and concurrent examination of plaintiff that she suffered from major depression and PTSD. His

report carefully laid out the test results and his findings that
led to his diagnoses.  One of the tests was an MMPI-II, which
yielded valid results.  Dr. Yelsa fully explained his rationale
for assigning a GAF score of 52.  What is not explained is the
basis for the previous GAF score of 75.

There is evidence to support periodic fluctuations in the
severity of plaintiff's PTSD, and she was doing "relatively well"
on Serzone in 2001.  This limited evidence from one chart note in
2001 is not convincing evidence that her PTSD symptoms were
relieved over a longer period of time.

The evidence also reflects Dr. Yelsa and Dr. Boziewich both
reached similar conclusions regarding plaintiff's lack of ability
to work.  Dr. Yelsa was aware of plaintiff's past substance abuse
issues.  Dr. Boziewich was fully aware of plaintiff's then
"current" use of marijuana.  Yet they both concluded plaintiff
was disabled, after being told explicitly to disregard any
limitations arising from plaintiff's substance abuse.

Moreover, it is ironic the Commissioner challenges the
validity of the opinions of Dr. Yelsa and Dr. Boziewich because
they were rendered on check-off box forms, because those opinions
were sought by the Commissioner in that form.  In any event, the
chart notes from both doctors are fully consistent with their
ultimate disability opinions.

Finally, Dr. Thomson's disability opinion is not necessarily

20 - OPINION AND ORDER

inconsistent with other opinions.  He opined plaintiff was disabled because of anxiety.  Plaintiff's anxiety was a factor considered by Dr. Yelsa and Dr. Boziewich in their subsequent disability opinions.

In summary, the court credits as true the limitations resulting from plaintiff's mental impairments as described by Dr. Yelsa and Dr. Boziewich.  The Vocational Expert testified that, under such circumstances, plaintiff would not be able to engage in substantial gainful activity.  Accordingly, the Court concludes the Commissioner's final decision denying plaintiff's claim for disability benefits is not supported by substantial evidence.

<u>**CONCLUSION**</u>

For all the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this matter is **REMANDED** to the Commissioner for an award of benefits to plaintiff.

IT IS SO ORDERED.

DATED this 20 day of December, 2007.


/s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

21- OPINION AND ORDER

22- OPINION AND ORDER